IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

LOUIS CORTEZ HOLLOWAY                                            PLAINTIFF

VS.                                                  CIVIL ACTION NO. 2:03-cv-599-MTP

MARION COUNTY, MS, et al,                                    DEFENDANT

## OPINION AND ORDER

Presently before the court is the defendants' *Motion to Dismiss, or in the Alternative, Summary Judgment* [46][1] filed on behalf of Marion County, Mississippi, Marion County Board of Supervisors, and Sheriff Richard Stringer.[2] Having considered the defendants' motion and attachments, along with documents made a part of the record of this case[3] and the applicable law, and being thus fully advised in the premises, the court finds that the motion should be GRANTED.[4] The court further finds more specifically as follows:

Plaintiff Louis Cortez Holloway, a state prisoner proceeding *in forma pauperis* and *pro se,* brings this action pursuant to 42 U.S.C. § 1983 against the Sheriff of Marion County,

---

[1]Because matters outside the pleadings are included in the movant's submissions, the motion will be treated as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(b) and disposed of as provided in Federal Rule of Civil Procedure 56.

[2]Plaintiff has not filed a response in opposition. The pending motion [46] was filed on July 24, 2006. Although Plaintiff did not respond to the motion, the court entered an order [55] on November 1, 2006, notifying Plaintiff that the motion, if granted, could result in a dismissal of the case and directing that any response be filed by November 12, 2006. Plaintiff never responded despite being granted additional time to do so.

[3]Plaintiff's complaint, his amended complaints, and his sworn testimony from the omnibus hearing held in this matter are considered herein. Although Defendants propounded discovery to him, Plaintiff has filed no responses.

[4]The parties having consented to disposition by the Magistrate Judge [38], the court is authorized to enter final judgment pursuant to Fed. R. Civ. P. 73 and local rule 73.1.

Richard Stringer, in his official capacity, the Marion County Board of Supervisors, and Marion County, Mississippi. Liberally construing the plaintiff's claims as the court is required to do,[5] it appears that he asserts claims arising from denial of adequate medical treatment and the conditions of his confinement while he was a pretrial detainee in the Marion Walthall County Regional Correctional Facility (hereinafter "MWCF") from March 2001 until approximately April 2001.[6] Holloway was arrested for an indicted charge of aggravated assault; approximately one month after his arrest, he pled guilty and was sentenced to twenty years with five years suspended and fifteen years to serve. He was then transferred from MWCF to another facility.

By specific reference to the plaintiff's omnibus hearing testimony, it appears that the claims remaining for consideration by the court are Holloway's claims that medication for his seizure disorder that he brought to the facility with him was not administered to him, that trusties were used to deliver medications to him, that he was not taken to the hospital every time he had a seizure, that the shower in his zone did not work some of the time, that the toilet would not flush without pouring water into it, that he had to sleep on the floor because he was one of six inmates

---

[5] *Pena v. United States,* 122 F.3d 3, 4 (5th Cir. 1997). The court conducted a screening or omnibus hearing in this matter to allow the plaintiff to clarify his allegations pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[6] This case was instituted by the filing of what Holloway and his co-plaintiff Demario Walker termed a "class action" complaint. That civil action (2:03cv551) was thereafter ordered severed into two actions, one for each plaintiff, and on August 8, 2004, an order was entered denying the plaintiff's motion for appointment of class counsel. To the extent that Holloway has stated claims that are not for violations of rights that are personal to him but has attempted to assert claims on behalf of other inmates, those claims must be dismissed. *See Brumfield v. Jones,* 849 F.2d 152, 154-55 (5th Cir. 1988); *Coon v. Ledbetter,* 780 F.2d 1158, 1160-61 (5th Cir. 1986); *King v. Corrections Corp. of America,* No. 4:06cv77, 2006 WL 2265064, at *1 (N.D. Miss. July 31, 2006). Given the opportunity to provide additional information with respect to any claims that Holloway had made relative to assaults and contagious diseases, Holloway replied that those claims did not apply because he had never been assaulted or contracted a contagious disease. *See* Order [25] and Response [26] at 1 (i)-(o). He also testified at the omnibus hearing that he no longer wanted to pursue any claim about inmates being segregated by race.

in a four-man cell, and that his food was served in open trays.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

All facts are considered in favor of the non-moving party, including all reasonable inferences from those facts. *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1198 (5th Cir. 1995). There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 94 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir 1994) is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

3

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, 42 U.S.C. § 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers. It affords a remedy only to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).

Inadequate Medical Care

Although Holloway has not named any member of the MWCF staff as a defendant in this action, he has generally alleged that "they" did not administer the medication that he brought to the jail,[7] that "they" would not take him to the hospital when he thought he needed to go,[8] and that "they" used trusties to bring him his medication.[9] It appears from Holloway's testimony that his seizure disorder was asymptomatic at the time of his being booked into the MWCF and that when he had a seizure, he was taken to the hospital and provided medication.[10]

Pretrial detainees have "a constitutional right, under the Due Process Clause of the Fourteenth Amendment not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur County, Tex.,* 245 F.3d 447, 457 (5th Cir. 2001). To prevail on a section 1983 claim against a jail official, a pretrial detainee must show that the defendant "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee, but responded with deliberate indifference to that risk." *Hare v. City of Corinth,*

---

[7]Transcript at 13:7, 16:12–17:12.

[8]Transcript at 19:5-15.

[9]Transcript at 20:18–21:6.

[10]Transcript at 17–18.

*Miss.,* 74 F.3d 633, 650 (5th Cir.1996) (en banc).   The standard is "not whether the jail officers 'knew or should have known,' but whether they had gained *actual knowledge* of the substantial risk...and responded with deliberate indifference." *Hare v. City of Corinth, Miss.,* 74 F.3d at 650 (emphasis added).   Deliberate indifference cannot be inferred from an official's failure to act reasonably. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 (5th Cir. 1996).   Instead, "the *Farmer* test purports to distinguish between errant inaction and infliction of punishment: Punishment is inflicted only when a prison official *was aware* of a substantial risk of serious harm to a convicted inmate but was deliberately indifferent to that risk." *Id.*   Thus, "the response demanded of jail officials with actual knowledge of such risk of serious injury is that he not act with deliberate indifference." *Id.*

In the context of a pretrial detainee's claim for denial of reasonable medical care, deliberate indifference "means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

Even if the court were to conclude on the basis of Holloway's omnibus hearing testimony that jail personnel had knowledge of his seizure disorder, the inquiry does not end there. Holloway must provide evidence sufficient to allow a jury to determine that jail personnel intended that the harm–in this case, a seizure–occur. *See Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002)(affirming district court's finding of deliberate indifference where jail nurses did not follow specific mandatory orders and doctors' instructions despite their actual knowledge of the seriousness of the inmate's condition).   Even viewing the evidence in the light most favorable to Holloway, the court finds the evidence wholly insufficient to support such a

5

determination.

Deliberate indifference is an extremely high standard to meet: "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. Of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotations and citation omitted).

By his own testimony, Holloway shows that he cannot meet this standard. He testified that at some point several months before his detention at MWCF, while he was living at home, he suffered seizures after he had been without medication for "maybe three weeks." According to Holloway, that was "enough" time "to where I say it wasn't enough in my system."[11] After he was arrested and placed at MWCF, he claims that he was not given his medication for "two, maybe three weeks,"[12] but he acknowledges that when he had a seizure, an ambulance was called, and he was taken to the hospital.[13] Although it is unclear whether he was "rushed" to the hospital on three occasions or just "when [he] had the real bad one,"[14] what is clear is that he was taken to the hospital for treatment, even if it was not as often as he thought he needed to go.[15] It is also clear that when the hospital "finally wrote [him] out a prescription [and] sent it back with

---

[11] Transcript at 14:20–16:10.

[12] Transcript at 17:12.

[13] Transcript at 17:19-24.

[14] Transcript at 17:3, 17:23–18:10.

[15] Transcript at 19:2-15.

Marion County," the medication was given to him,[16] and the seizures stopped.[17]

That jail personnel should have known about the risk of a seizure will not support liability; actual knowledge is required: "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 528 (5th Cir. 1999)(quoting *Farmer v. Brennan*, 511 U.S. at 838). Neither is it sufficient to show deliberate indifference. *Domino*, 239 F.3d at 756. Perhaps in hindsight the failure to administer the medication that Holloway claims to have brought with him to the jail may be "ill advised," but it does not raise a genuine issue of material fact as to whether jail personnel acted with subjective deliberate indifference in providing Holloway with constitutionally-mandated medical treatment. *See Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 739 (5th Cir. 1997); *see also Callicutt v. Panola County Jail*, 200 F.3d 816 at *2 (5th Cir. 1999) (describing failure to provide medication "upon each request" as a negligent act).

The Constitution only prohibits "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). It does not impose liability for simple carelessness or inadvertent failure to provide appropriate medical care. *Id.* Holloway was taken to the hospital and given medication for his seizures. Even taking his allegations as claims that he should have been examined or received treatment sooner, those claims constitute negligence rather than deliberate indifference. *See Randall v. Behrns*, 141 Fed. Appx. 307, at *1 (5th Cir. 2005) (citing *Varnado v. Lynaugh*, 920 F.2d 320,

---

[16]Transcript at 18:13-14, 17:2-4.

[17]Transcript at 21:9-12.

321 (5th Cir. 1991)). Similarly, Plaintiff's disagreement with jail personnel about when he needed to go to the hospital constitutes nothing more than a disagreement with the medical treatment that he was provided and does not establish deliberate indifference to his serious medical needs.  *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).   Based on the facts contained in the record and Holloway's failure to show that jail personnel acted with deliberate indifference to his medical needs, his claim for inadequate medical care likewise fails.

Delay in Providing Medical Treatment

Holloway contends that when he arrived at MWCF, he brought with him prescription medications for his seizure disorder. He claims that these medications were not administered to him during the first two to three weeks of his detention and that he had a seizure.  He also claims to have suffered a temporary problem with headaches.[18]  Even taken as true, these allegations are insufficient to support a section 1983 claim for delay of medical treatment:  "Delay in medical care can only constitute a...violation [of the right to medical care] if there has been deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also Sanders v. Spillers*, 129 Fed. Appx. 117, 118 (5th Cir. 2005) (referring to "permanent physical damage" and holding that plaintiff had not shown substantial harm from alleged failure to treat for seventeen days);  *Serton v. Sollie*, No. 02-61010, 2003 WL 22849840,

---

[18] The Court:         Okay.  So the . . . would you suffer any permanent problems with the seizures, or they were just temporary?
Mr. Holloway:    Yeah.
The Court:         Temporary?
Mr. Holloway:    Besides headaches, that's - - that's about it.

Transcript at 18:18-24.

at *4 (5th Cir. December 02, 2003).[19]  Because Holloway has "failed to assert that delay in providing medical treatment...caused him substantial harm," he also fails to state a remediable claim arising from any such delay.  *See Harris v. Ashby*, 45 Fed. Appx. 325, at *2 (5th Cir. 2002) (affirming summary judgment where the plaintiff failed to assert that alleged delay in providing medical treatment for his high blood pressure caused him substantial harm, "which is necessary to establish a constitutional violation").

Conditions of Confinement

Conditions of confinement claims such as those made by the plaintiff in this case are analyzed under the reasonable- relationship test delineated by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979). *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).  A constitutional violation exists under this standard only if the complained-of condition is found not to be reasonably related to a legitimate, non-punitive governmental objective. *Id*. at 640. Since the State may not punish pretrial detainees, the focus of the inquiry is thus whether the challenged condition was punitive. *Bell*, 441 U.S. at 535.  That the "detention interferes with the detainee's understandable desire to live as comfortably as possible" does not, without more, render the condition punitive. *Id.* at 537.

In this case, Holloway complained about inadequate sewage and shower facilities, but he testified that during the month he was incarcerated at MWCF, although the shower on his zone

---

[19] In *Serton*, considering the plaintiff's claim that the sheriff had acted with subjective deliberate indifference by taking his cane, the court stated:  "Serton contends that he had a medical prescription for the cane prior to his incarceration and that he told the jail medical staff of this fact on his arrival at the jail.  This fact, if true, does not show that Sheriff Sollie and Jail Administrator Callahan were subjectively aware of this fact or that they acted with deliberate indifference to Serton's need for a cane." *Id.*

9

did not work some of the time, he did have access to a shower in a different zone from where he was housed. He also stated that he had to pour water into the commode in order for it to flush because it would not flush by simply pushing a button . He complained about the facility's failure to provide sanitary bedding and of having to sleep on the floor because he was one of six inmates in a four-man cell, but he admitted that he did have access to a blanket, pillow, and mattress. Although he alleged inadequate kitchen facilities and food service, his real complaint was with open food trays, and he admitted that he did receive his two meals per day and that he had access to the canteen and "was all right." He alleges that the jail lacked adequate fire equipment; however, he admitted that even when prisoners set fires, he did not have any problems from the smoke.[20]

Rather than punitive, the conditions about which Holloway complains appear to rise to no more than "a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 n. 21; *see also Hamilton v. Lyons*, 74 F.3d 99, 106-07 (5th Cir. 1996)(affirming dismissal of conditions of confinement claim as frivolous); *Callicutt v. Panola County Jail*, 200 F.3d 816 at *2 (5th Cir. 1999)(affirming summary judgment on finding that under *Bell* the plaintiff had not shown that the jail made him sleep on a blood-and-urine stained mattress infested with lice or kept the jail in an unsanitary condition as a form of punishment on a condition-of-confinement claim).

In the absence of summary judgment evidence to the contrary, Holloway's conclusional allegations will not suffice to show a genuine issue as to whether the challenged conditions were punitive: "In determining whether...conditions are reasonably related to the Government's

---

[20]The foregoing facts are taken from the omnibus hearing transcript at pages 21 through 25.

interest in...operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 & n. 23 (internal quotations and citation omitted).  As substantial evidence is required and Holloway has failed to offer any evidence at all showing that the challenged conditions of his confinement were not reasonably related to a legitimate, non-punitive objective, he is not entitled to relief for those claims.

Official Capacity/ Policy Claims

Holloway's claims against the defendants in their official capacities are treated as claims against the county. *Bennett v. Pippin*, 74 F.3d 578, 584-85 (5th Cir. 1996).[21]  The county can be held liable for Holloway's section 1983 claims only if three requirements are met:  The county must have an official policy, practice or custom that could subject it to section 1983 liability; the policy must be linked to the constitutional violation, and the policy must reflect the county's deliberate indifference to that injury.  *Lawson v. Dallas County*, 286 F.3d 257 (5th Cir. 2002)(citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978)).[22]

---

[21]"When a plaintiff sues a county...official in her official capacity, the county...is liable for the resulting judgment... .  A suit against the Sheriff in his official capacity is a suit against the County." *Id*. at 384.

[22]Given that the plaintiff has failed to provide summary judgment evidence sufficient to establish an issue of material fact as to whether MWCF staff were deliberately indifferent to his medical needs or whether the challenged conditions of confinement were reasonably related to the facility's operation, otherwise applicable official policies do not appear to be implicated.  *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 528 (5th Cir. 1999); *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 739 (5th Cir. 1997); *see also Sibley v. Lemaire,* 184 F.3d 481, 488 (5th Cir. 1999)(noting that before policies are considered "the court first [has] to determine that, based on the record before it, a specific employee had acted with deliberate indifference to Sibley's medical condition").

Since neither the county nor the sheriff may be held liable on a theory of respondeat superior,[23]

> to hold...a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.  To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as the moving force behind the [constitutional] violation at issue, or that [his] injuries resulted from the execution of the official policy or custom.  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

To the extent that he alleges misconduct on the part of jail personnel with respect to administering medications[24] or taking him to the hospital when he thought he needed to go, Holloway's policy arguments are stated only in general and conclusory terms.[25]  They certainly do not link the alleged misconduct to any specific Marion County policy or custom and therefore

---

[23]*See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

[24] Holloway complains of what could be termed the facility's "practice" of using trusties instead of nurses to provide him with his medication.  Transcript at 20: 14--21: 12.  For section 1983 purposes, an official policy does not have to be a written policy; it may be "a persistent widespread practice...which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Lawson*, 286 F.3d at 263.

[25]Holloway's response to the court's order requiring him to "demonstrate a policy or custom of Marion County which caused the alleged violation of plaintiff's constitutional rights" refers only to "Marion County jail policy on smoking, sanitation, classification, inmate safety/protection from harm, proper medical care and food preparation policy."  Order [25] and Response [26] at 1(c).  Ordered to "specifically state how Marion County Board of Supervisors violated his constitutional rights" Holloway responded: "by failure to implement policies & procedures to effectively & orderly run the Marion County jail while preserving the life, safety & health of its occupants."  *Id.* at 1(e).  As to specifically stating "how defendant Stringer violated his constitutional rights," Holloway responded: "by a failure to carry out any policy implemented in regards to jail conditions to include medical, physical & the safety and well being of the inmates housed there."  *Id.* at 1(f).

do not meet the *Spiller* specificity test. *See also Son v. Fraiser,* 71 Fed. Appx. 304, 306 (5th Cir. 2003) (where plaintiff's "only references to a custom or policy [were] his statements that the conditions of his confinement were the policies of the...County Jail," affirming summary judgment on basis that "[c]onclusory references to an alleged but unidentified policy are not sufficient to withstand summary judgment"); *Callicutt v. Panola County Jail*, 200 F.3d 816 at *2 (5th Cir. 1999) ("Besides mere allegations against the Sheriff, Callicut also fails to show any evidence demonstrating a Jail policy to deprive detainees of medical care.").

Vicarious Liability/Failure to Train or Supervise

Under section 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 459 (5th Cir. 2001). A sheriff who is not "personally involved in the acts that deprived the plaintiff of his constitutional rights" may only be liable if "1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Id*.

Holloway has not alleged that the sheriff was personally involved in the events upon which his complaint is based or that he was even aware of Holloway's medical needs.[26] Neither has he claimed any deficiency in the training or supervision of jail personnel who were involved. Even if he had, "proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Id*.

Holloway likewise does not assert that the sheriff "had a policy of ignoring or failing to monitor the medical needs of detainees" nor does he identify any...policies promulgated by [the]

---

[26] Holloway has sued Sheriff Stringer only in his official capacity as the sheriff of Marion County. Although Holloway has not alleged that the sheriff was involved in the challenged medical decisions, nothing in the sheriff's affidavit "indicates he subjectively knew of a risk to [Holloway] or that he deliberately disregarded such a risk." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 528 (5th Cir. 1999). The sheriff's affidavit does, however, provide unrefuted evidence that the training policies and procedures of the sheriff's department and the correctional facility "were in compliance with those established by the Mississippi Law Enforcement Officers Training Program by the State of Mississippi." *See* Motion [46] Exhibit C.

sheriff...that would deny or even impede the prompt provision of medical care to a detainee in distress...[or] that would impair the provision of timely medical assistance to inmates suffering [seizures]." *See Thompson v. Upshur County, Texas*, 245 F.3d at 462.[27]

## CONCLUSION

Based on the foregoing analysis, the court FINDS that Holloway has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claims.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Defendants' *Motion to Dismiss, or in the Alternative, Summary Judgment* [46] should be, and hereby is, GRANTED. Plaintiff's claims against the defendants are dismissed with prejudice.

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED AND ADJUDGED this the 21st day of November, 2006.


                                                s/ Michael T. Parker
                                                United States Magistrate Judge

---

[27] Although the policy analysis in *Thompson* was done with reference to the sheriff's entitlement to qualified immunity, the court noted that "while the issues of qualified immunity and deliberate indifference are separate and distinct, we note that, as a matter of law, plaintiffs could not succeed in showing that [the] sheriff, in his role as [a] county policymaker, was deliberately indifferent to the serious medical needs of Thompson. Our precedent makes clear that deliberate indifference on the part of a policymaker cannot generally be shown from a single violation of constitutional rights... . As noted above, no more than the single incident made the basis of this suit has been shown here." *Thompson*, 245 F.3d at 463.